UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


| GEORGE J. ERBE, | : | **CIVIL NO. 1:08-CV-0813** |
|---|---|---|
| | : | |
| Plaintiff | : | (Judge Conner) |
| | : | |
| v. | : | (Magistrate Judge Smyser) |
| | : | |
| JOHN E. POTTER, POSTMASTER | : | |
| GENERAL, | : | |
| | : | |
| Defendant | : | |


## REPORT AND RECOMMENDATION


I.  Background and Procedural History.


     The plaintiff's amended complaint was filed on March 6,

2009.  An answer was filed on March 18, 2009.  The plaintiff is

George J. Erbe ("Erbe").  The defendant is John E. Potter,

Postmaster General.  The claims of the plaintiff are that the

defendant discriminated against the plaintiff in terminating

the plaintiff's employment as a part time rural postal carrier

on the basis of a perception that the plaintiff was disabled

and on the basis of age and that the adverse actions taken

against the plaintiff by the defendant were taken in retaliation for the plaintiff's involvement in the Equal Employment Opportunity ("EEO") process. The amended complaint cites Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA") and the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.*

The amended complaint alleges that the plaintiff, born in 1946, began his United States Postal Service ("USPS") employment as a Rural Carrier Associate ("RCA") in York, Pennsylvania on January 23, 2006. He had a back spasm in May of 2006 and was not able to work for three days. He was told by the USPS on August 25, 2006 that he was separated from the rolls of the USPS because he had failed to report an accident in a timely manner. The USPS wrongly believed that he was not entitled to grieve that decision, it is alleged. But his bargaining unit did file a grievance on his behalf. As a result of the grievance, his separation was reduced on February 1, 2007 to a time-served suspension. Then, on February 23, 2007, the plaintiff began to pursue a union

2

grievance against the USPS alleging harassment and hostile work environment concerning training, work environment, working conditions and return to work.

The plaintiff and the USPS began to mediate that matter. An agreement was reached. That grievance was withdrawn. The plaintiff never filed a formal complaint of discrimination with the Equal Employment Opportunity Commission ("EEOC"). After the plaintiff had later not been returned to work, however, on August 13, 2007, the plaintiff did file a formal discrimination complaint. This complaint alleged reprisal against the plaintiff (not returning him to work) by the USPS because the plaintiff had been involved in the described challenges. It also alleged disability discrimination. This formal complaint was dismissed by the USPS and the plaintiff was told that he was not going to be returned to work. The plaintiff was then told, on October 2, 2007, that he had never been reinstated to the rolls of the Postal Service even though he had been told that he was to be reinstated.

The plaintiff filed another union grievance alleging retaliation against him for pursuing an earlier EEOC complaint and disability discrimination. This was denied.

The plaintiff in this civil action seeks compensatory relief as well as retroactive reinstatement to his Postal Service job.

The defendant has filed a motion for summary judgment. The defendant filed a LR 56.1 statement, evidentiary materials and a brief in support. The plaintiff filed a LR 56.1 statement and affidavits, but no brief in opposition. The defendant filed a reply brief. The plaintiff was permitted to and did file a sur-reply brief. Given that the plaintiff filed a LR 56.1 statement, affidavits and a sur-reply brief, and given that the defendant filed a reply brief, we will not consider the motion to be unopposed. Adequate statements of the positions of the parties are presented to decide the issues. We have not required further briefing. This Report addresses the defendant's motion and recommends that it be granted in part and denied in part.

II.  <u>Summary Judgment Standards.</u>

Summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'-- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.  Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must "set out specific facts showing a genuine issue for trial."  Fed.R.Civ.P. 56(e)(2).

A material factual dispute is a dispute as to a factual issue the determination of which will affect the outcome of the trial under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

Summary judgment is not appropriate when there is a genuine dispute about a material fact. *Id.* at 248. A dispute as to an issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson, supra,* 477 U.S. at 249-50. In determining whether a genuine issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving

party. *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988).

At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial. *Anderson, supra,* 477 U.S. at 249. The proper inquiry of the court in connection with a motion for summary judgement "is the threshold inquiry of determining whether there is the need for a trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex, supra*, 477 U.S. at 322. "Under such circumstances, 'there can be no genuine issue as to any

material fact, since a complete failure of proof concerning an

essential element of the nonmoving party's case necessarily

renders all other facts immaterial.'" *Anderson v. CONRAIL*, 297

F.3d 242, 247 (3d Cir. 2002)(quoting *Celotex, supra*, 477 U.S.

at 323).


III.  Material Facts.


The defendant summarizes the material facts as follows

in his brief in support of his motion for summary judgment:

**A. Erbe's RCA duties**

On January 23, 2006, the USPS hired Erbe
as a RCA, and on August 25, 2006, Ann Brady,
Erbe's supervisor, notified him that he would
be separated from the USPS rolls for failure to
timely report an accident. Jose Canto, Erbe's
second level manager, concurred in Erbe's
separation, and he was separated from the rolls
on September 2, 2006.  Erbe filed a workmen's
compensation claim for a muscle spasm he
experienced in May, but the Department of Labor
(DOL) denied his claim and Erbe did not appeal.

RCAs are non-career employees who are
hired to provide service on a rural route when
the rural carrier, who is permanently assigned
to the route, is on leave.  RCAs work alone and
are required to lift up to 70 pounds because
USPS mailing standards allow customers to send
and receive parcels that may weigh up to 70

8

pounds.  Therefore, RCAs must be able to collect these parcels from or deliver them to customers' roadside mailbox or residence without assistance.

The collective bargaining agreement between the USPS and Erbe's union prohibits the USPS from assigning RCAs to light duty. Additionally, the collective bargaining agreement only permits non-career RCAs to transfer to other non-career RCA positions. Finally, limited duty is restricted work provided to employees who have on the job injury claims accepted by the DOL.

## B.  Erbe's union grievance

At the time of Erbe's termination, he was a member of the National Rural Letter Carriers' Association (Erbe's union) and he filed a grievance regarding his separation.  On February 1, 2007, Beverly Hellstrom, on behalf of Erbe's union, and Joseph Ruser, on behalf of the USPS, settled Erbe's union grievance by entering into a step 2 settlement agreement, which stated "[t]he notice of separation issued to [Erbe] will be reduced to a long term suspension for time served....[Erbe] to make himself available for a fitness for duty examination to be scheduled by USPS."  Neither Brady nor Canto had any involvement or input in resolving Erbe's union grievance.

Erbe was required to submit to a fitness for duty examination because Ruser was concerned about Erbe's ability to safely perform the RCA job.  Erbe's union agreed to the requirement.  It is not unusual to require an employee to make himself available for a fitness for duty examination.

## C.  Erbe's fitness for duty examination

Darlene Myers, USPS Occupational Health Nurse Administrator, was solely responsible for scheduling Erbe's fitness for duty examination and reporting the results of the examination to Ruser.  Myers chose Dr. Goodman to conduct Erbe's fitness for duty examination because Dr. Goodman is an experienced orthopedic specialist who provides thorough and timely reports; he is familiar with the USPS and knowledgeable about the requirements of the positions; the USPS has a medical agreement with him; and Dr. Goodman is located in a geographic location that was accessible to Erbe. Ruser had no input or involvement in choosing Dr. Goodman to conduct Erbe's fitness for duty examination.

Myers advised Dr. Goodman via March 5, 2007 letter that Erbe was a RCA, who was separated for failing to timely report an accident, and his workmen's compensation claim was denied.  Additionally, Myers requested that Dr. Goodman examine Erbe and determine whether he was capable of safely performing the essential function of a RCA and provided him with a RCA job description.

On March 14, 2007, Dr. Goodman conducted a fitness for duty examination upon Erbe.  During the fitness for duty examination, Erbe revealed to Dr. Goodman that in May 2006, he was simply sitting and upon climbing stairs, he felt severe low back spasms, of such intensity as to necessitate a hospital emergency room visit, and thereafter, he felt the spasms were work related.  Because no x-rays were taken when Erbe experienced the back spasms, Dr. Goodman requested and the USPS agreed that Erbe have a x-ray.  Upon review of the x-ray report documenting moderate arthritic disease as well

10

as narrowing of the disc spaces and various small joints of the low back and Erbe admitting to a prior incident of severe low back pain requiring an emergency room visit, Dr. Goodman opined that Erbe would be medically qualified to perform the functions of the RCA position only if the restriction of not lifting more than 40 pounds without assistance could be accommodated.

On March 28, 2007, Dr. Goodman's office forwarded to Myers via facsimile his report, a copy of Erbe's x-ray report, and USPS medical assessment. On March 28, 2007, Myers sent Ruser; Paula McKee, USPS Labor Relations; and Lyle Gaines, USPS Labor Relations Specialist, an electronic message advising that upon reviewing the essential functions of a RCA and Erbe's back x-ray, Dr. Goodman reported that Erbe "is capable of performing all the activities of the Rural Carrier position other than lifting seventy pounds. Dr. Goodman['s] final assessment was Moderate Risk/restriction recommending that lifting more than 40 pounds would require assistance." For confidentiality reasons, Myers did not provide Ruser or anyone else at the USPS with a copy of Dr. Goodman's report, Erbe's x-ray report, or USPS medical assessment.

## D. Erbe not returning to work

An individual cannot perform the essential functions of a RCA if he cannot lift over 40 pounds without assistance because RCAs are required to lift up to 70 pounds. Thus, Erbe was not fit for duty as a RCA. The collective bargaining agreement requires RCAs to be fit for duty and prohibits light duty assignments for RCAs. Because non-career RCAs, such as Erbe, are not qualified for other USPS

Bargaining Unit work and can only transfer to other non-career RCAs positions, there was no means by which he could be placed in another USPS position that would have met his work restrictions.

When Ruser advised Barbara Callahan, Pennsylvania State Steward for Erbe's union, of the results of Erbe's fitness for duty examination, she informed Ruser that the USPS complied with the step 2 settlement agreement because Erbe's [sic] was not fit for duty and as such, could not be reinstated or returned to work.  Therefore, Erbe's union and the USPS agreed that Erbe's initial removal would stand and no further action would be taken with respect to his employment.

Therefore, by July 23, 2007 letter, Ruser informed Erbe of the results of the fitness for duty examination and because Dr. Goodman's assessment was that he could not lift more than forty (40) pounds without assistance, the USPS was unable to consider him for re-employment or reinstatement as a RCA.  Erbe's union did not file any grievance or otherwise assert that the USPS had failed to comply with the step 2 settlement agreement.

**E. Erbe's EEO activity**

On February 23, 2007, for the first time, Erbe sought EEO counseling based upon age and gender discrimination.  On March 27, 2007, Erbe; Sandra Christianson, mediator; and USPS management, Brady and Canto mediated his EEO matter. Karen Malizia, EEO ADR Coordinator for Eastern Area, attended the mediation as an observer to evaluate the mediator.

During the mediation, Brady and Canto discussed what training and routes Erbe would receive if he was returned to work through the union grievance process. Erbe testified that verbal promises were made to him regarding training and routes. Neither Brady nor Canto promised to return Erbe to work because they did not have the authority to return him to work. Erbe admitted that Brady and Canto did not promise to return him to work and they told Erbe he had to get medical clearance to return to work. At the conclusion of the mediation, Erbe voluntarily withdrew his EEO matter and completed a withdrawal of complaint of discrimination form, which stated: "I fully understand that by withdrawing the complaint or allegations(s) [sic] I have withdrawn, I am waiving my rights to any further appeal of this allegation through the EEO process. I further stipulate that my withdrawal did not result from threat, coercion, intimidation, promise, or inducement." No written settlement agreement was entered into at the mediation.

Erbe admitted that he did not file an EEO complaint in which he alleged the basis of discrimination was age. Additionally, he did not provide written notice to the EEO regarding his intent to file an age discrimination suit.

(Doc. 47, pp 2-8 (internal citations omitted)).

The non-moving party, the plaintiff, although he did not file a brief in opposition to the motion of the defendant for summary judgment, did file a responsive LR 56.1 statement of material facts in dispute, and affidavits. The plaintiff's

LR 56.1 statement is not set forth or summarized herein, for
the reason that we conclude on the basis of the defendant's own
LR 56.1 statement that summary judgment is not warranted.  Many
of the responsive LR 56.1 statements of the plaintiff are in
the nature of arguments.  Some of the arguments made by the
plaintiff in his responsive statement have merit, and some of
these form the basis for the recommendation made herein that
summary judgment be denied because material factual issues are
in dispute.

IV.  <u>Discussion.</u>

     The plaintiff's employment discrimination claim here is
essentially a claim that he had lost his job both as a
retaliation for his litigation activity and because of his age.
The parties have both argued this case as a pretext case to
which the burden-shifting framework of *McDonnell Douglas Corp.
v. Green*, 411 U.S. 792 (1972), applies.  "This framework has
three steps: (1) the plaintiff bears the burden of establishing
a *prima facie* case of discrimination; (2) the burden then
shifts to the defendant, who must offer a legitimate non-

discriminatory reason for the action; and (3) if the defendant satisfies this burden, the plaintiff must then come forth with evidence indicating that the defendant's proffered reason is merely a pretext." *McNemar v. Disney Store, Inc.*, 91 F.3d 610, 619 (3d Cir. 1996).

If a plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant to articulate some legitimate nondiscriminatory reason for the adverse employment decision. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). An employer satisfies its burden of production by introducing evidence which would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision. *Id*. "The employer need not prove that the tendered reason *actually* motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." *Id*.

Once the defendant meets its relatively light burden by articulating a legitimate reason, the burden of production

rebounds to the plaintiff.  To defeat summary judgment the

plaintiff must point to some evidence, direct or

circumstantial, from which a fact finder could reasonably

either (1) disbelieve the employer's articulated legitimate

reasons; or (2) believe that an invidious discriminatory reason

was more likely than not a motivating or determinative cause of

the employer's action. *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d

Cir. 1994).  To avoid summary judgment, "the plaintiff's

evidence rebutting the employer's proffered legitimate reasons

must allow a fact finder reasonably to infer that *each* of the

employer's proffered non-discriminatory reasons was either a

*post hoc* fabrication or otherwise did not actually motivate the

employment action (that is, the proffered reason is a

pretext)." *Id*. (citations omitted).  "To discredit the

employer's proffered reason, the plaintiff cannot simply show

that the employer's decision was wrong or mistaken, since the

factual dispute at issue is whether a discriminatory animus

motivated the employer, not whether the employer is 'wise,

shrewd, prudent, or competent.'" *Brewer v. Quaker State Oil

Refining Corp.*, 72 F.3d 326, 331 (3d Cir. 1995).  Rather, the

plaintiff must demonstrate "such weaknesses, implausibilities,

16

inconsistencies, incoherencies, or contradictions" in the employer's proffered reasons that a reasonable fact finder could rationally find the proffered reasons unworthy of credence and infer that the employer did not act for those asserted reasons. *Fuentes*, *supra*, 32 F.3d at 765.

The defendant's summary judgment arguments are that the plaintiff does not have evidence to support a *prima facie* case of retaliation and can not rebut as pretextual the defendant's proffered legitimate and non-discriminatory (physical capacity) reason for not returning him to work; that the plaintiff does not have evidence to establish a *prima facie* case of perceived disability and can not rebut as pretextual the legitimate, non-discriminatory reasons of the defendant for not returning him to work; that the plaintiff failed to exhaust his administrative remedies as to his age discrimination claim; and, that the plaintiff does not have evidence to establish a *prima facie* case of age discrimination and can not rebut as pretextual the legitimate, non-discriminatory reasons of the defendant for not returning him to work.

The plaintiff's retaliation claim is that the defendant retaliated against the plaintiff for having challenged the disciplinary action taken against the plaintiff before the EEOC.

The defendant argues that the plaintiff fails to show that there is evidence to support a reasonable inference of a causal connection between his EEOC activity and the defendant's termination of the plaintiff's employment. We do not agree. Shortly after the plaintiff had challenged a disciplinary action against him and an agreement had been reached that he would be reinstated subject to the completion of a physical examination, the defendant subjected the plaintiff to a return-to-duty physical examination. For unexplained reason(s), the defendant informed the examining doctor of the disciplinary action against the plaintiff. The defendant might reasonably be seen to have informed the employer-retained doctor implicitly of the employer's preferred outcome. The examining doctor and the defendant rejected the plaintiff's own assertion that he can perform the lifting requirements of the job. These developments occurred in a series of events that occurred

within a short period of time.  The plaintiff drew the

inference of retaliation.  A jury could as well.  The

plaintiff's claim that his dismissal was motivated by

retaliation against him for exercising his right of access to

EEOC proceedings should survive summary judgment.


       As noted above, in the defendant's summary judgment

materials the reasons for the defendant to have required the

plaintiff to submit to a fitness for duty examination before he

was returned to duty are not explained.  All that is stated is

that Ruser was concerned about Erbe's ability to safely perform

the RCA job and that the plaintiff's union did not object.

Also, the evolution of this matter from a job action based upon

an alleged failure to timely report an accident to a fitness

for duty issue is not explained.  The reason the defendant had

for supplying information to Dr. Goodman, a doctor selected by

the defendant to evaluate the plaintiff's fitness to perform

his work, about the fact of the plaintiff's separation, and

that it was for failing to report an accident, is not

explained.  The methodology and rationale of Dr. Goodman's

residual functional capacity assessment from his diagnosis is

not explained.  For reasons explained below, these factual

matters are material, and the absence of explanations precludes

summary judgment.


The defendant does not demonstrate that it is not

reasonably seen to be in dispute under the summary judgment

record whether there was a causal connection between, on the

one hand, the plaintiff's successful challenge to his

separation from his RCA job and his EEO grievance and, on the

other hand, his job termination.  The defendant has articulated

a facially non-discriminatory reason for the plaintiff's

discharge, that the plaintiff could not perform the RCA's job

lifting requirements.  But the defendant does not demonstrate

under the summary judgment evidence that it is not reasonably

in dispute whether the fitness-for-duty examination of the

plaintiff following his union grievance, and the determination

from that examination that he could no longer fulfill the

lifting requirements of the job for which he had been selected

and bid just a year earlier, was pretextual justification for

the refusal to return the plaintiff to work after the

plaintiff's challenge to his disciplinary termination.  There

is also no explanation for the compromise of the plaintiff's disciplinary termination in a compromise agreement involving a fitness-for-duty issue. The plaintiff may be able to prove pretext, and has demonstrated for summary judgment purposes that there is evidence from which an inference of pretext could be drawn.

It is a factor preventing a determination that the issue of pretextual justification is not reasonably in dispute that the medical finding made by Dr. Goodman and said to have been relied upon by the defendant of an inability of the plaintiff to perform job lifting requirements was not based upon an objective measure such as, for example, a failure on the part of the plaintiff to pass a physical test requirement of lifting 70 pounds. Rather, it was based upon a subjective opinion of a doctor retained by the defendant that the plaintiff could not lift 70 pounds, and an inference drawn by the doctor from the arthritic condition of the plaintiff's spine. There is not a showing of the doctor's methodology or of his medically analytical process in determining an inability to perform the RCA 70 pound lifting requirements from his

examination.  Nor is there any showing of a standard USPS

protocol for establishing that an RCA does or does not meet the

physical capacities requirements of the position, either

periodically or in conjunction with certain job-related events.

So, it seems to arise from no clear basis that this requirement

was placed upon this particular RCA at this particular time.

The defendant's summary judgment evidence also provides no

support for a finding that determinations to discontinue postal

carriers based upon doctors' subjective opinions about the

carrier's lifting capacity derived from a finding of moderate

arthritis and narrowed spinal discs are normal or customary

within the USPS.

Accordingly, it will be recommended that the motion for

summary judgment be denied as to the plaintiff's Title VII

claim.

In order to bring a claim under the Rehabilitation Act,

the plaintiff must demonstrate that he meets the definition of

an "individual with a disability[,]" which is a person who: (1)

"has a physical or mental impairment that substantially limits

a major life activity; (2) has a record of such impairment; or (3) is regarded or perceived as having such an impairment." 29 U.S.C. § 705(9)(B).

The defendant argues that there is not a material factual issue reasonably in dispute and that he is entitled to judgment as a matter of law as to the plaintiff's Rehabilitation Act claim because the plaintiff was not regarded as disabled by the defendant. The defendant did not perceive the plaintiff to be substantially limited in any major life activity, the defendant asserts. The defendant claims that this assertion is consistent with the undisputed facts. The defendant acknowledges that his agency perceived the plaintiff to be unable to work as a postal carrier but, he asserts, that does not mean that the plaintiff was perceived by the defendant as being substantially limited in lifting or carrying. The defendant cites authority from Courts of Appeals of Circuits other than the Third Circuit to support the argument that under the Rehabilitation Act and the Americans with Disabilities Act the plaintiff is not an "individual with a disability" because he was not regarded or perceived by USPS as having a physical

or mental impairment that substantially limits a major life activity.  The defendant cites *Mack v. Great Dane Trailers,* 308 F.3d 776 (7th Cir. 2002), *Williams v. Channel Master Satellite Systems, Inc.,* 101 F.3d 346 (4th Cir. 1996), *Aucutt v. Six Flags Over Mid-America, Inc.,* (85 F.3d 1311 (8th Cir. 1996), *Contreras v. Suncast Corp.,* 237 F.3d 756 (7th Cir. 2001), and *Lucas v. W.W. Grainger, Inc.,* 257 F.3d 1249 (11 Cir. 2001) in support of his argument that the plaintiff is not an "individual with a disability."  The defendant does not cite Third Circuit case law construing this statutory terminology.  (Doc. 47, pp. 25-30).

In *Williams v. Philadelphia Housing Authority Police Dept.,* 380 F.3d 751 (3d Cir. 2004),[1] the Court held that even if one has the ability to perform a broad range of jobs, one is nevertheless disabled under the ADA if one is significantly restricted in one's ability to perform most of the jobs in one's geographical area that utilize training, knowledge,

---

1.  *Williams* is cited by the defendant (Doc. 47, p. 20) for the proposition that the plaintiff can not establish causation based upon timing alone, but is not discussed nor distinguished as to the "individual with a disability" issue.

skills and abilities similar to the job one has been disqualified from performing. Applying this construction of the statute, which a district court in the Third Circuit will, there is an unaddressed material issue of fact as to whether the plaintiff was or was not perceived by the defendant to be able to perform most of the jobs in his geographical area that utilize training, knowledge, skills and abilities similar to the job which he has been found to be disqualified from performing and as to whether he was perceived by the defendant as able to perform most of the jobs in his geographical area that utilize training, knowledge, skills and abilities similar to the job which he has been found to be disqualified from performing.

On the issue of whether the plaintiff was "otherwise qualified" to perform his job, the defendant asserts that the plaintiff has not submitted any evidence to contradict the defendant's doctor's opinion that the plaintiff could not lift up to 70 pounds. The plaintiff has repeatedly and emphatically asserted that he is able to lift more than 70 pounds. The defendant cites no support for the defendant's implicit

argument that a person is not a competent witness to present probative evidence that the person/witness is able to lift more than 70 pounds even if the person/witness has had some arthritic spinal changes like a high percentage of persons will have had in their adult years.

The defendant argues that the plaintiff can not show for purposes of his Rehabilitation Act claim a causal connection between his disability and not being returned to work.  We do not agree, in that he was not returned to work after and because he was perceived to be unable to perform the job's lifting requirements.  The defendant cites the case of *Atkinson v. LaFayette College,* 460 F.3d 447 (3d Cir. 2006) for the proposition that the plaintiff's belief that he can perform the lifting requirements of the job at issue is not enough to establish pretext.  The *Atkinson* decision does not appear to support a conclusion in this case helpful to the defendant.

The defendant argues, however, that the issue is not whether the plaintiff can lift 70 pounds, but whether doing so will present a risk of injury.  Assuming that the consideration

of risk of injury is the sole consideration, and that whether or not the plaintiff is perceived to be unable to perform the task(s) is not the germane consideration, nevertheless there is not an absence of a genuine factual dispute on the risk of injury issue. Risk being an issue inherently involving speculation and probability as to future events, in a context where a person evaluates the risk as to his own physical person, the person's evaluation is, as already noted, probative evidence. Moreover, the defendant presents no evidence of a risk of injury beyond Dr. Goodman's opinion. Dr. Goodman's opinion provides no conclusive basis for a finding that the plaintiff can not lift 70 pounds or for a finding of a risk of injury. His opinion does not show either issue not to be reasonably in dispute.

The defendant argues that the plaintiff has not exhausted administrative remedies as to his age discrimination claim. The plaintiff did not file a brief in opposition to the defendant's motion for summary judgment and accordingly does not rebut the position of the defendant as to exhaustion. The defendant states in No. 181 and 182 of his LR 56.1 statement:

181. Erbe admitted that he did not file an EEO complaint in which he alleged age discrimination.

182. Erbe conceded that he did not provide written notice to the Equal Employment Opportunity Commission advising of his notice of intent to file a civil action under the Age Discrimination in Employment Act.

(Doc. 46, 181-182, p. 35 (internal citations omitted)).  The plaintiff's LR 56.1 statement admits these two numbered statements.  (Doc. 54, p. 22).  The defendant's motion for summary judgment should be granted as to the plaintiff's age discrimination claim because it is not opposed.


V.  Recommendations.


     For the forgoing reasons, it is recommended that the defendant's motion for summary judgment (Doc. 45) be granted as to plaintiff's claim of age discrimination under the Age

Discrimination in Employment Act and that, otherwise, the defendant's motion for summary judgment be denied.


                                        _/s/ J. Andrew Smyser_
                                        J. Andrew Smyser
                                        Magistrate Judge


Dated:  November 13, 2009.