## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GEORGE J. ERBE**, | : | **CIVIL ACTION NO. 1:08-CV-0813** |
| | : | |
| **PLAINTIFF** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **JOHN E. POTTER**, | : | |
| | : | |
| **Defendant** | : | |

## <u>MEMORANDUM</u>

Plaintiff George Erbe ("Erbe"), a former employee of the United States Postal Service ("USPS"), brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e-17, the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-634, and the Rehabilitation Act of 1973 ("Rehabilitation Act" or "RA"), 29 U.S.C. §§ 791-794e. Erbe alleges that defendant, John E. Potter, the Postmaster General, discriminated against him in terminating his employment as a Rural Carrier Associate ("RCA") on the basis of a perception that he was disabled and on the basis of age. He further contends that defendant took adverse actions against him in retaliation for his involvement in the Equal Employment Opportunity ("EEO") process. Presently before the court is the report (Doc. 60) of the magistrate judge, recommending that defendant's motion for summary judgment (Doc. 45) be granted as to Erbe's claim of age discrimination and denied as to all other claims. For the reasons that follow, the court will adopt this recommendation in part and reject it in part. Specifically, defendant's motion for summary judgment (Doc. 45) will be granted as to Erbe's claim of age

discrimination under the ADEA and perceived disability under the RA, but the motion will be denied regarding the claim for retaliation.

I.  **Statement of Facts and Procedural History** [1]

On January 23, 2006, the USPS hired Erbe as an RCA. (Doc. 46 ¶ 1; Doc. 54 ¶ 1). RCAs are required to case, deliver, and collect mail along prescribed rural routes using a vehicle. (Doc. 54 ¶ 3). When Erbe worked as an RCA, he worked alone. (Doc. 46 ¶ 5; Doc. 54 ¶ 5). RCAs must physically be able to perform the duties of the position efficiently, including prolonged standing, walking, bending and reaching, and handling of heavy containers of mail weighing up to seventy pounds, the maximum allowable mailing weight. (Doc. 46 ¶¶ 7, 12; Doc. 54 ¶¶ 7, 12). The collective bargaining agreement between the USPS and the National Rural Letter Carriers' Association, Erbe's union, requires RCAs to be fit to perform the full duties of their position, and it prohibits light duty assignments for rural carriers. (Doc. 46 ¶¶ 21-3; Doc. 54 ¶¶ 21-3).

In May of 2006, Erbe suffered back spasms; he was "simply sitting and upon climbing stairs, he felt severe low back spasms, of such intensity as to necessitate a hospital emergency room visit, and thereafter, he felt the spasms were work related[.]" (Doc. 46 ¶ 82; Doc. 54 ¶ 82). USPS employees are required to report any injury or accident in which they are involved immediately to their supervisors.

---

[1] In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to the plaintiff, the nonmoving party.  See infra Part II.

(Doc. 46 ¶ 31; Doc. 54 ¶ 31).  By letter dated August 25, 2006, Erbe's supervisor notified Erbe of his "separation from the rolls of the Postal Service" because of his "failure to follow instructions: failure to report an accident timely."  (Doc. 46 ¶ 32; Doc. 54 ¶ 32).  Erbe's separation from the USPS was effective on September 2, 2006. (Doc. 46 ¶ 34; Doc. 54 ¶ 34).

On November 8, 2006, Erbe filed a step-one grievance form with his union regarding his letter of removal for failure to timely report an accident, (Doc. 46 ¶ 48; Doc. 54 ¶ 48), and on November 15, 2006, Erbe filed a step-two grievance form, (Doc. 46 ¶ 49; Doc. 54 ¶ 49).  On February 1, 2007, Erbe's union grievance was settled by a step-two settlement agreement which stated, "The notice of separation issued to [Erbe] will be reduced to a long term suspension for time served[,]" and which required Erbe "to make himself available for a fitness for duty examination to be scheduled by USPS."  (Doc. 46 ¶ 51; Doc. 54 ¶ 51).

A fitness for duty examination request was completed and approved on March 5, 2007, (Doc. 46 ¶ 64; Doc. 54 ¶ 64), and the examination was scheduled with Dr. Bruce Goodman ("Dr. Goodman") for March 14, 2007, (Doc. 46 ¶ 67; Doc. 54 ¶ 67).  USPS officials advised Dr. Goodman that Erbe was separated from the USPS "for failing to report an injury in a timely manner" and "[h]is claim for a back strain was subsequently denied by [worker's compensation] and was never appealed by [Erbe]." (Doc. 46 ¶ 72; Doc. 54 ¶ 72).  Dr. Goodman's final assessment was "[m]oderate [r]isk/restriction recommending that lifting more than 40 pounds would require assistance."  (Doc. 46 ¶ 101; Doc. 54 ¶ 101).  Erbe contests the validity

of the restriction and asserts that he "is and always has been capable of lifting 70 pounds independently." (Doc. 54 ¶ 6). By letter dated July 23, 2007, the USPS informed Erbe that as an RCA, he "was required to lift seventy (70) pounds. Therefore in accordance with Dr. Goodman's assessment that you can not lift more than forty (40) pounds without assistance, we are unable to consider you for re-employment or reinstatement as a Rural Carrier Associate." (Doc. 46 ¶ 115; Doc. 54 ¶ 115).

Erbe first sought EEO precomplaint counseling on February 23, 2007 for an "age and gender discrimination case." (Doc. 46 ¶¶ 122-23; Doc. 54 ¶¶ 122-23). After mediating the dispute, (Doc. 46 ¶¶ 124-28; Doc. 54 ¶¶ 124-28), Erbe voluntarily withdrew his request for EEO counseling and completed a withdrawal of complaint of discrimination form, (Doc. 46 ¶ 138; Doc. 54 ¶ 138). On June 29, 2007, Erbe sought precomplaint counseling "on the basis of disability (perceived) and in reprisal for [Erbe's] prior EEO activity" because he had not been returned to pay status. (Doc. 46 ¶¶ 143-44; Doc. 54 ¶¶ 143-44). On August 13, 2007, Erbe filed a formal discrimination complaint claiming that he suffered retaliation for his prior EEO activity and perceived disability. (Doc. 46 ¶ 145; Doc. 54 ¶ 145). Erbe never filed an EEO complaint in which he alleged age discrimination. (Doc. 46 ¶ 181; Doc. 54 ¶ 181). Erbe also did not provide written notice to the EEOC advising of his intent to file a civil action under the ADEA. (Doc. 46 ¶ 182; Doc. 54 ¶ 182).

Erbe filed the instant suit on May 1, 2008, alleging that defendant retaliated against him for his involvement in the EEO process, and that his termination from

4

the USPS was based on his perceived disability and age, in violation of the RA and ADEA. (Doc. 1). Defendant thereafter filed a motion for summary judgment (Doc. 45) asserting that plaintiff: (1) cannot establish a *prima facie* case of retaliation or perceived disability; (2) cannot rebut as pretextual defendant's legitimate, non-discriminatory reason for not returning him to work; (3) failed to exhaust his administrative remedies with regard to his age discrimination claim; and (4) cannot establish a *prima facie* case for age discrimination or rebut defendant's reasons for not returning him to work. (Doc. 45). In his report (Doc. 60), the magistrate judge recommended that defendant's motion for summary judgment be granted as to Erbe's claim of age discrimination, and denied as to the claims for retaliation and perceived disability. The parties have filed objections to the magistrate judge's report, and the issues are now ripe for disposition.

## II.    <u>Standard of Review</u>

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact," and for which a jury trial would be an empty and unnecessary formality. <u>See</u> FED. R. CIV. P. 56(c). It places the burden on the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. <u>Pappas v. City of Lebanon</u>, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-57 (1986);

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see

also FED. R. CIV. P. 56(c), (e). Only if this threshold is met may the cause of action

proceed.  Pappas, 331 F. Supp. 2d at 315.

### III.    Discussion

Erbe alleges that he was subject to retaliation in violation of Title VII.  He

also asserts claims of age discrimination in violation of the ADEA and

discrimination on the basis of perceived disability under the RA.  The court will

address these issues *seriatim*.

### A.    Retaliation

Erbe alleges that the USPS engaged in retaliation through a "continuing

campaign of reprisal against him for his having been involved in the EEO process,

by refusing to permit him to return to work since April, 2007."  (Doc. 1 ¶ 35).  Title

VII proscribes retaliation by an employer against "employees or applicants for

employment . . . because [they] ha[ve] opposed any practice made an unlawful

employment practice by this subchapter, or because [they] ha[ve] made a charge,

testified, assisted, or participated in any manner in an investigation, proceeding, or

hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  A plaintiff who suffers an

adverse employment action as a result of participating in EEOC proceedings may

bring a retaliation claim.  See e.g., Curay-Cramer v. Ursuline Acad. of Wilmington,

Del., Inc., 450 F.3d 130, 135 (3d Cir. 2006) (stating that Title VII is "triggered by

formal EEOC proceedings 'as well [as] informal protests of discriminatory

employment practices'") (citing Sumner v. United States Postal Serv., 899 F.2d 203,

209 (2d Cir. 1990))).  Defendant raises two arguments against Erbe's retaliation

claim: first, that Erbe cannot establish a *prima facie* case of retaliation, and second,

that Erbe cannot rebut as pretextual the defendant's legitimate, non-discriminatory

reason for not returning plaintiff to work.  The court will address these arguments

in turn.

### 1.    Failure to Establish a *Prima Facie* Case

To state a *prima facie* case of retaliation, a plaintiff must allege that:  (1) he or

she engaged in a protected activity, (2) the employer subjected him or her to an

adverse employment action, and (3) "a causal link exists between the protected

activity and the adverse action."  Weston v. Pennsylvania, 251 F.3d 420, 430 (3d Cir.

2001); see also Aguiar v. Morgan Corp., 27 F. App'x 110, 112 (3d Cir. 2002); Glenn v.

Horgan Bros., Inc., No. Civ. A. 03-6578, 2005 WL 1503428, at *2 (E.D. Pa. June 24,

2005).

In the case *sub judice*, Erbe has come forward with evidence that he took part

in a protected activity: participating in the EEO process both informally, through

precomplaint counseling and mediation, and formally, by filing discrimination

complaints.  (Doc. 46 ¶¶ 122, 124-28, 143-45; Doc. 54 ¶¶ 122, 124-28, 143-45).  Such

participation in the EEO process constitutes protected activity and satisfies the first

prong of his *prima facie* case.  See Curay-Cramer, 450 F.3d at 135 (concluding that

"protecting opposition conduct includes more than formal filing of charges before

the EEOC").  Furthermore, the USPS's continued refusal to return plaintiff to work

is sufficient to satisfy the second prong of Erbe's *prima facie* case of retaliation.  See

Weston, 251 F.3d at 430-31 (defining an adverse employment action as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing significant change in benefits") (quoting Burlington Indus. v. Ellerth, 524 U.S. 742, 768 (1998))); see also Burlington N. & Santa Fe Ry. Co. v White, 548 U.S. 53, 68 (2006) (explaining that an adverse action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination").  Turning therefore to the third prong, the court will analyze whether Erbe has shown a "causal link" between the protected activity and his dismissal.

Cases from the Third Circuit and the Supreme Court have provided this court with "a broad array of evidence" to consider "in determining whether a sufficient causal link exists to survive a motion for summary judgment."  LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 (3d. Cir 2007) (citing Farrell v. Planters Lifesavers Co., 206 F.3d 271, 284 (3d Cir. 2000)).  "Where the temporal proximity between the protected activity and the adverse action is 'unusually suggestive,' it is sufficient standing alone to create an inference of causality and defeat summary judgment."  Id. (citing Clark County School Dist. v. Breeden, 532 U.S. 268, 273-74 (2001); Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989)).  "Where the temporal proximity is not 'unusually suggestive,' we ask whether 'the proffered evidence, looked at as a whole, may suffice to raise the inference.'"  Id. (citing Farrell, 206 F.3d at 280).  "Among the kinds of evidence that a plaintiff can proffer are intervening antagonism or retaliatory animus, inconsistencies in the employer's

8

articulated reasons for terminating the employee, or any other evidence in the record sufficient to support the inference of retaliatory animus." Id. at 232-33 (citing Farrell, 206 F.3d at 279-81). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252.

Standing alone, the temporal proximity of the relevant events in the pending action is insufficient to establish causality. Erbe was separated from the USPS rolls on September 2, 2006, (Doc. 46 ¶ 34; Doc. 54 ¶ 34), his participation in the EEOC process began on February 23, 2007, (Doc. 46 ¶ 122; Doc. 54 ¶ 122), and he was informed by the USPS that he would not be returned to work on July 23, 2007, (Doc. 46 ¶ 115; Doc. 54 ¶ 115). The evidence as a whole, however, may suffice to support plaintiff's inference that his failure to be reinstated was the result of retaliatory animus. The USPS subjected Erbe to a fitness for duty examination, but before the examination was conducted, the USPS inexplicably advised the examining physician, Dr. Goodman, that Erbe was separated from the USPS "for failing to report an injury in a timely manner" and "[h]is claim for a back strain was subsequently denied by [worker's compensation] and was never appealed by [Erbe]." (Doc. 46 ¶ 72; Doc. 54 ¶ 72). Such reference to disciplinary action against the plaintiff may support an inference that defendant implicitly informed the employer-retained doctor of the employer's preferred outcome. Plaintiff's inference of retaliatory animus may also be supported by the fact that he had participated in

9

precomplaint counseling and mediation before the USPS made its final determination. (Doc. 46 ¶¶ 122, 124-28, 143-44; Doc. 54 ¶¶ 122, 124-28, 143-44). An inference of causality could arise from Erbe's evidence; therefore, the court will not grant summary judgment at step one of the McDonnell Douglas analysis of Erbe's retaliation claim.

### 2.    **Failure to Demonstrate Pretext**

If a plaintiff establishes a *prima facie* case of retaliation, McDonnell Douglas burden-shifting applies: "'[T]he burden shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse employment action.'" Shellenberger v. Summit Bancorp., Inc., 318 F.3d 183, 187 (3d Cir. 2003) (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997)); see also Iadimarco v. Runyon, 190 F.3d 151, 157 (3d Cir. 1999). The defendant's burden to prove a legitimate non-discriminatory reason is "relatively light." Johnson v. Keebler-Sunshine Biscuits, Inc., 214 F. App'x 239, 242-43 (3d Cir. 2007). The defendant is only required to prove that its actions could have been motivated by the proffered legitimate, nondiscriminatory reason; proof of actual causation is not required. Iadimarco, 190 F.3d at 157. Once the defendant has met its burden, the plaintiff must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are merely a pretext for discrimination." Johnson, 214 F. App'x at 241-42. The plaintiff may survive summary judgment by either "(i) discrediting the employer's proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely

than not a motivating or determinative cause of the adverse employment action."

Wishkin v. Potter, 476 F.3d 180, 185 (3d Cir. 2007) (citing Fuentes v. Perskie, 32 F.3d

759, 764 (3d Cir. 1994)).

Defendant has articulated a facially non-discriminatory reason for Erbe's

discharge: an RCA is required to lift up to seventy pounds and Erbe's fitness for

duty exam resulted in assessment of "[m]oderate [r]isk/restriction recommending

that lifting more than 40 pounds would require assistance." (Doc. 46 ¶ 101; Doc. 54

¶ 101). Defendant, therefore, has met its relatively light burden. The onus thus

shifts back to plaintiff to prove that defendant's reason was merely pretext for

discrimination. Applying this third step of the McDonnell Douglas analysis to the

case *sub judice*, Erbe has adduced evidence to discredit his employer's proffered

reason for termination and survive summary judgment: the USPS's inexplicable

coloring of the fitness for duty examination and Erbe's extensive participation in

the EEO process both provide evidence sufficient to overcome summary judgment.[2]

A reasonable jury could infer that retaliatory animus contributed to USPS's failure

to reinstate Erbe, and therefore, defendant's summary judgment motion regarding

Erbe's retaliation claim will be denied.

### B.    ADEA

Plaintiff claims that the USPS engaged in age discrimination. The ADEA

provides "employees of the federal government with two separate avenues for

---

[2]  See supra Part III.A.1.

pursuing age discrimination claims.  First, the federal employee may elect to pursue

a claim through the administrative process by filing a complaint with the Equal

Employment Opportunity Commission (EEOC)."  <u>Galante v. Cox</u>, Civ. A. No. 05-

06739, 2006 WL 1371191, at *4 (E.D. Pa. May 16, 2006) (citing 29 U.S.C.S

§ 633a(b)(3)); <u>see also</u> <u>Stevens v. Dep't of Treasury</u>, 500 U.S. 1, 5-6 (1991); <u>Fallon v.

Ashcroft</u>, Civ. A. No. 00-5258, 2002 U.S. Dist. LEXIS 12202, at *10-11 (E.D. Pa.  Jan.

25, 2002).  This avenue is foreclosed in the instant case; Erbe admits that he did not

file an EEO complaint in which he alleged age discrimination.  (Doc. 46 ¶ 181; Doc.

54 ¶ 181).

    As an alternative to this first method, "the employee may file an action

directly in federal court after providing the EEOC with 30 days' notice of his or her

intent to file suit."  <u>Galante</u>, 2006 WL 1371191, at *4 (citing 29 U.S.C.S § 633a(c)-(d));

<u>see also</u> <u>Stevens</u>, 500 U.S. at 6; <u>Fallon</u>, 2002 U.S. Dist. LEXIS 12202, at *11.

Pursuant to 29 U.S.C.S § 633a(d), a plaintiff who decides to present the merits of his

age discrimination claim to a federal court in the first instance must provide the

EEOC with at least thirty days advance notice of an intent to sue, and that notice

must be filed with the EEOC within 180 days of the alleged unlawful practice.  <u>See

Stevens</u>, 500 U.S. at 6; <u>Ren v. Dalton</u>, Civ. A. No. 97-4777, 1997 WL 786442, at *2

(E.D. Pa. Nov. 24, 1997).  Viewing the facts in the light most favorable to the

plaintiff, the latest date on which Erbe's ADEA claim could have accrued was

July 23, 2007, the day he was informed he would not be returned to work.  (Doc. 46

¶ 114; Doc. 54 ¶ 114).  Plaintiff's second avenue, therefore, is also barred; Erbe

admits that he did not provide written notice to the EEOC advising of intent to sue, (Doc. 46, ¶ 182; Doc. 54, ¶ 181-86), and his 180-day window to notify the EEOC expired long before he filed the instant suit.

Failure to comply with EEOC filing and notice requirements will result in plaintiff's ADEA claim being time-barred.  See Podobnik v. United States Postal Serv., 409 F.3d 584, 593 (3d Cir. 2005) (upholding summary judgment where rural letter carrier did not comply with ADEA claim filing and notice requirements because "District Court properly found that his claim was time-barred").  Because Erbe did not comply with the requirements of either avenue of relief under the ADEA, his claim is time-barred, and defendant's motion for summary judgment will be granted as to plaintiff's claim of age discrimination.

### C.    Rehabilitation Act

Erbe alleges that the USPS "discriminated against him based on disability (perceived)" in violation of the Rehabilitation Act.  (Doc. 1 ¶ 35).  The RA is applicable to federal employers and it is, in many respects, the functional equivalent of the Americans with Disabilities Act ("ADA").  It "forbids employers from discriminating against persons with disabilities in matters of hiring, placement, or advancement."  Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007) (quoting Shiring v. Runyon, 90 F.3d 827, 830-31 (3d Cir. 1996)).  Under both statutes, "the substantive standards for determining liability are the same."  Antol v. Perry, 82 F.3d 1291, 1299 (3d Cir. 1996) (quoting McDonald v. Pa. Dep't of Pub. Welfare, 62 F.3d 92, 95 (3d Cir. 1995)); see 29 U.S.C. § 791(g); see also Wishkin, 476 F.3d at 184

("The Rehabilitation Act expressly makes the standards set forth in the 1990

Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., applicable to federal

employers . . . .").[3]

_____

[3] The court notes that the ADA Amendments Act ("ADAAA") of 2008 made changes to both the ADA and RA. See generally Pub. L. No. 110-325. The effective date of the ADAAA, however, was January 1, 2009, id., after the alleged discriminatory conduct at issue in this case. To determine whether a federal statute should be applied in cases which relate to conduct that occurred before the statute was enacted, the court must first consider whether the language of the statute expressly commands such application. See Landgraf v. USI Film Prods., 511 U.S. 244, 280 (1994) (noting that it is axiomatic that "retroactivity is not favored in the law…. Congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result" (citing Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208 (1988))). Finding no language in the ADAAA expressly commanding application of the amendments to conduct before January 1, 2009, the court will turn to the second prong of the analysis: whether the new statute "would have retroactive effect, i.e. whether it would impair the rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." Landgraf, 511 U.S. at 280. "If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result." Id. The court concludes that the application of the ADAAA to pre-enactment conduct would indeed "increase a party's liability for past conduct" or "impose new duties with respect to transactions already completed[,]" because the amendments substantially broadened the class of protected individuals under the ADA and RA. Thus, the court declines to apply the ADAAA retroactively to the present case. Although there is a dearth of Third Circuit precedent on this issue, several recent decisions support the court's conclusion. See e.g. EEOC v. Agro Distrib., LLC, 555 F.3d 462, 469 n.8 (5th Cir. 2009) (holding that the ADA Amendment "changes do not apply retroactively"); Fikes v. Wal-Mart, Inc., 322 Fed. Appx. 882, 883 n.1 (11th Cir. 2009) (applying the "ADA as it was in effect at the time of the alleged discrimination"); Kiesewetter v. Caterpillar, Inc., 295 Fed. Appx. 850, 851 (7th Cir. 2008) (declining to apply the ADAAA retroactively); Supinski v. United Parcel Serv., Civ. A. No. 3:CV-06-0793, 2009 WL 113796, at *5 n.6 (M.D. Pa. Jan. 16,

To make out a *prima facie* case of discrimination under the RA, a plaintiff must establish the following: "(1) that he or she has a disability; (2) that he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that he or she was nonetheless terminated or otherwise prevented from performing the job." Wishkin, 476 F.3d at 185 (citing Shiring, 90 F.3d at 831). There are three ways in which plaintiffs can prove that they have a disability. Plaintiffs can prove that (1) they have a "physical or mental impairment that substantially limits one or more of the major life activities of such individual"; or (2) they have a "record of such impairment"; or (3) they are "regarded as having such an impairment." 29 C.F.R. § 1630.2(g); 29 U.S.C. § 705(20)(B); 42 U.S.C. § 12102(1).

Erbe cannot use either of the first two methods to prove that he is disabled because he admits that "he is not alleging that he has a disability." (Doc. 46 ¶ 171; Doc. 54 ¶ 171). Additionally, even if he is limited to lifting only forty pounds, such a lifting restriction does not qualify Erbe as disabled because it does not constitute a substantial impairment of a major life activity. See Marinelli v. City of Erie, Pa., 216 F.3d 354, 364 (3d Cir. 2000) (holding that a plaintiff with a ten-pound lifting restriction was not "sufficiently different from the general population such that he

---

2009) (stating that the ADAAA "cannot be applied retroactively to conduct that preceded its effective date"); Britting v. Shineski, Civ. A. No. 3:08-CV-1747, 2010 WL 500442 (M.D. Pa. Feb. 5, 2010) (same).

is substantially limited in his ability to lift[,]" and that the plaintiff therefore failed to demonstrate that he was unable to perform "either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities" necessary to show a substantial impairment of the major life activity of working); Supinski v. United Parcel Serv., Inc., Civ. A. No. 2009 WL 113796, at *5 (M.D. Pa. Jan. 16, 2009) (holding that plaintiff "does not have an impairment that substantially limits a major life activity" despite a physician's opinion that plaintiff could not lift more than seventy pounds to the waist, twenty-five pounds to the shoulder, and more than twenty pounds over his head); Shaw v. Chamberlain Mfg. Corp., Civ. A. No. 05-1344, 2006 WL 2382284, at *8 (M.D. Pa. Aug. 17, 2006) (granting summary judgment in favor of employer because a twenty-five pound lifting restriction did not constitute a substantial limitation of the major life activities of lifting or working).

Instead, Erbe's "disability (perceived)" claim is an effort to establish disability through the "regarded as disabled" avenue. "There are two apparent ways in which individuals may fall within [the 'regarded as disabled'] statutory provision: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, non-limiting impairment substantially limits one or more major life activities." Sutton v. United Airlines, 527 U.S. 471, 489 (1999). Erbe's claim falls within the first category because he contests the validity of the imposed lifting restriction and repeatedly asserts that he can lift

16

the full seventy pounds required by his former RCA position. (Doc. 54 ¶ 6). Viewed in the light most favorable to plaintiff, the evidence indicates that USPS entertains a mistaken belief that Erbe has a physical impairment in that he cannot lift more than forty pounds. As a matter of law, however, this is insufficient to show that plaintiff is "regarded as disabled." This perceived physical impairment is not an impairment that substantially limits one or more major life activities. In the Third Circuit, as discussed <u>supra</u>, a lifting restriction even as stringent as ten pounds does not substantially limit the major life activities of lifting and working. Erbe, therefore, is not regarded as disabled within the meaning of the RA. The court will thus grant defendant's motion for summary judgment as to plaintiff's claim of discrimination on the basis of perceived disability.[4]

---

[4] This conclusion differs from the recommendation of the magistrate judge's report (Doc. 60), but the court notes that in his subsequent objection to the report, defendant answered the magistrate judge's call for the inclusion of Third Circuit case law on the issue.

17

**IV.** **Conclusion**

Plaintiff has stated a *prima facie* case for retaliation under Title VII, and has adduced evidence sufficient to create a genuine issue of material fact as to whether defendant's reason for not reinstating him to his RCA position was merely pretextual. Plaintiff's other claims, however, fail: his age discrimination claim is time-barred as a result of his failure to comply with EEOC filing and notice requirements, and his RA claim fails because his lifting restriction does not constitute a substantial impairment of a major life activity. Therefore, the magistrate judge's report (Doc. 60) will be adopted in part and rejected in part, and defendant's motion for summary judgment (Doc. 45) will be granted as to plaintiff's ADEA and RA claims, but denied with respect to Erbe's claim for retaliation.

An appropriate order follows.


 S/ Christopher C. Conner 
CHRISTOPHER C. CONNER
United States District Judge


Dated:        March 22, 2010

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GEORGE J. ERBE,** | : | **CIVIL ACTION NO. 1:08-CV-0813** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **JOHN E. POTTER,** | : | |
| | : | |
| **Defendant** | : | |

## <u>ORDER</u>

AND NOW, this 22nd day of March, 2010, upon consideration of defendant's

motion for summary judgment (Doc. 45) and the report (Doc. 60) of the magistrate

judge, and for the reasons set forth in the accompanying memorandum, it is hereby

ORDERED that:

1.  The report (Doc. 60) of the magistrate judge is ADOPTED in part and
    REJECTED in part as follows:

    a.  The report is ADOPTED with respect to plaintiff's claim for
        retaliation.  Defendant's motion (Doc. 45) for summary
        judgment on this claim is DENIED.

    b.  The report is ADOPTED with respect to plaintiff's claim for age
        discrimination.  Defendant's motion (Doc. 45) for summary
        judgment on this claim is GRANTED.

    c.  The report is REJECTED with respect to plaintiff's perceived
        disability claim.  Defendant's motion (Doc. 45) for summary
        judgment on this claim is GRANTED.

2.      The Clerk of Court is directed to defer the entry of judgment on the claims described in Paragraph 1(b)-(c) until the resolution of all claims.


  S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge